**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

WILLIAM JOHN NEACE,

      Plaintiff,

v.                                   CIVIL ACTION NO. 3:19-cv-00365

ANDREW SAUL,[1]
Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS & RECOMMENDATION

    Plaintiff William John Neace ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f.  By standing order entered on January 4, 2016, and filed in this case on May 10, 2019, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  (ECF No. 4.)  Presently pending before this Court are Claimant's Brief in Support of Judgment on the Pleadings (ECF No. 9) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 10).

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d).  *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 9), **GRANT** the Commissioner's request to affirm his decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I.    BACKGROUND

### A. Information about Claimant and Procedural History of Claim

Claimant was 47 years old at the time of his amended alleged disability onset date and 49 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 28.)[2]  He is a high school graduate.  (*Id.* at 29, 292.)  Most recently, he worked for a tree company cutting trees.  (*Id.* at 30, 366.)   Claimant alleges that he became disabled on September 1, 2011,[3] due to lower back injuries, joint pain, chronic pain, loss of mobility, and chronic obstructive pulmonary disease ("COPD").  (*Id.* at 291.)

Claimant filed his applications for benefits on February 5, 2016.  (*Id.* at 255–64.) His claims were initially denied on June 17, 2016, and again upon reconsideration on September 6, 2016.  (*Id.* at 147–68, 174–87.)  Thereafter, on October 10, 2016, Claimant filed a written request for hearing.  (*Id.* at 188–92.)  An administrative hearing was held before an ALJ on March 4, 2018, in Huntington, West Virginia, with the ALJ appearing from Baltimore, Maryland.  (*Id.* at 18–54.)   On May 7, 2018, the ALJ entered an unfavorable decision.  (*Id.* at 122–42.)  Claimant then sought review of the ALJ's decision by the Appeals Council on July 10, 2018.  (*Id.* at 254.)   The Appeals Council denied

---

[2] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 8.
[3] Claimant later moved to amend his alleged onset date to January 6, 2016, and the ALJ granted his motion. (Tr. at 25.)

Claimant's request for review on March 20, 2019, and the ALJ's decision became the final decision of the Commissioner on that date. (*Id.* at 1–6.)

Claimant timely brought the present action on May 8, 2019, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) The Commissioner filed an Answer (ECF No. 7) and a transcript of the administrative proceedings (ECF No. 8). Claimant subsequently filed his Brief in Support of Judgment on the Pleadings (ECF No. 9), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 10). As such, this matter is fully briefed and ready for resolution.

### B. *Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

#### 1. *Treatment for Back Pain*

Upon a referral from his primary care physician, Claimant began treatment for chronic pain with Dr. Glen Imlay, M.D. ("Dr. Imlay"), a physical medicine and rehabilitation specialist, on May 28, 2015. (Tr. at 457–59.) Claimant reported "years of back pain" that had begun "radiating into his legs" and caused "numbness and tingling in his feet." (*Id.* at 458.) He also reported pain in his hips, knees, and ankles. (*Id.*) Claimant told Dr. Imlay that he had never been treated for the pain but experienced "temporary relief" from a chiropractor and "some relief" from medication. (*Id.* at 458–59.) Dr. Imlay ordered an x-ray of Claimant's lumbar spine, which revealed "mild degenerative changes." (*Id.* at 456, 464.) A nerve study was normal. (*Id.* at 456.) Dr. Imlay recommended physical therapy and modified Claimant's medications. (*Id.*)

Claimant received physical therapy for approximately one month in September and October 2015. (*Id.* at 380–97.) Upon initial evaluation at Claimant's first appointment on September 10, 2015, the physical therapist noted that Claimant had a reduced range of motion in his lumbar spine and some flexibility and mobility deficits but normal strength and no sensory impairments. (*Id.* at 380–81.) At his final session on October 10, 2015, the physical therapist related that Claimant "never noted a change in overall symptoms, just general soreness after visits." (*Id.* at 396.) Claimant reported to Dr. Imlay on October 8, 2015, that the physical therapy "did not help": "it gave him some relief, but not perfect." (*Id.* at 451.) Upon physical examination, Dr. Imlay observed "some stiffness and pain" with movement and decreased range of motion in Claimant's lumbar spine but full strength in his lower extremities. (*Id.*) Dr. Imlay ordered an MRI of Claimant's lumbar spine, which was conducted on October 30, 2015, and revealed degenerative disc disease and "moderate-to-severe narrowing to the right at L4-L5." (*Id.* at 402, 448, 451.) Dr. Imlay recommended that Claimant "be evaluated for a right L4-L5 nerve root injection." (*Id.* at 448.)

Claimant presented to Dr. Imlay for a follow-up appointment on January 14, 2016, and reported that he had not yet received the nerve root injection Dr. Imlay had recommended, but "the medicines do keep his pain level down." (*Id.* at 413, 445.) Dr. Imlay observed that Claimant experienced "stiffness" in his lumbar spine, but his range of motion was "stable," and he had normal strength in his lower extremities. (*Id.*) Dr. Imlay recommended that Claimant receive the nerve root injection and prescribed a trial of gabapentin. (*Id.*) On June 15, 2016, Dr. Imlay noted that Claimant was "stable" on his medications. (*Id.* at 439.) Upon physical examination, Dr. Imlay observed that Claimant's "[l]umbar range of motion was decreased, but stable with stiffness" and that

4

he had full strength in his lower extremities. (*Id.*) Imaging of Claimant's spine conducted on July 5, 2016, revealed "[d]egenerative changes" but "[n]o fracture or subluxation." (*Id.* at 474, 490, 534.)

Claimant presented to a pain management center on July 12, 2016, complaining of "[l]ow back pain radiating bilaterally to the feet including all of the toes" and "tingling and numbness in the legs and feet." (*Id.* at 531.) Claimant reported that he had experienced pain for the previous six years, and "it has worsened over time." (*Id.*) Upon physical examination, Claimant was noted to "stand[] and walk[] unassisted" with a "non-antalgic" gait, and his "[l]ower extremity movements [were] unrestricted and non-painful." (*Id.* at 535.) His muscle strength was normal. (*Id.*) Some "tenderness on palpation bilaterally" was observed at the L4-L5 vertebrae. (*Id.*) Claimant was diagnosed with degenerative lumbar spinal stenosis, lumbar degenerative disc disease, and lumbar spondylosis. (*Id.* at 535–36.) He received two transforaminal steroid injections in August 2016. (*Id.* at 682–91.) He reported no relief from the first and "25% pain relief for 2 hours" from the second. (*Id.* at 692–93.)

On October 13, 2016, Claimant received a nerve block injection. (*Id.* at 695–96.) He reported that it gave him "25% pain relief for 4 hours." (*Id.* at 703.) Claimant was diagnosed with myofascial pain syndrome. (*Id.*) He received a series of trigger point injections on three occasions in January and February of 2017. (*Id.* at 709–17.) However, at a follow-up appointment on February 23, 2017, Claimant reported that the injections provided "25% pain relief for just a couple hours each." (*Id.* at 723.) He received a sacroiliac joint injection on April 3, 2017, but he again reported "no relief." (*Id.* at 726–29, 731.) During this time, his providers' physical examination findings revealed that Claimant "stands and walks unassisted" with a non-antalgic gait. (*Id.* at 702, 706, 723,

731.)  He received another transforaminal steroid injection on July 27, 2017, and reported "50% pain relief for 3–4 days."  (*Id.* at 734–37, 740.)  He received yet another on September 26, 2017, and reported "20% pain relief for a couple hours."  (*Id.* at 742–45, 747.)  Still, at both of his follow-up appointments, Claimant was observed to "stand[] and walk[] unassisted" with a non-antalgic gait.  (*Id.* at 739, 747.)  At his November 7, 2017 follow-up appointment, Claimant reported that gabapentin "helps some" to relieve his pain, so his dosage was increased.  (*Id.* at 752.)  His provider ordered a spinal MRI, which revealed "multilevel degenerative disc disease."  (*Id.* at 752, 754–55, 760.)  Claimant's medication regimen was modified.  (*Id.* at 760.)

On December 4, 2017, Claimant presented to a neurosurgeon, complaining of low back pain that "radiates in the bilateral legs to feet and all toes," but worse in his right side, and "numbness and tingling in his bilateral toes at times."  (*Id.* at 611.)  Claimant stated that none of his previous medications "brought him back to baseline."  (*Id.*)  Upon physical examination, the neurosurgeon observed that Claimant had full strength in his lower extremities, "trace" reflexes in his knees and ankles, and a positive straight-leg-raising test on both sides.  (*Id.* at 612.)  The neurosurgeon noted "no evidence of instability" in Claimant's spine but "a fair amount of osteoarthritis."  (*Id.* at 613.)  He recommended that Claimant "try and continue this conservatively" without "neurosurgical intervention."  (*Id.*)  He ordered physical therapy.  (*Id.*)

Claimant began physical therapy on December 11, 2017.  (*Id.* at 624.)  The physical therapist noted that he was "non specific as to postures or movements which exacerbate or alleviate symptoms" and engaged in "muscle guarding" upon palpation of his lumbar spine.  (*Id.*)  His sensation was intact and his reflexes were symmetrical, but the physical therapist observed decreased muscle strength upon myotomal testing and decreased

6

range of motion in Claimant's lumbar spine.  (*Id.* at 625.)  It was also noted that Claimant had "[p]oor trunk strength."  (*Id.*)  He was observed to ambulate independently without the use of an assistive device.  (*Id.*)  It was recommended that Claimant receive physical therapy several times per week.  (*Id.* at 630.)

On January 22, 2018, Claimant returned to the pain management center for a follow-up appointment.  (*Id.* at 635.)  He stated that he was experiencing pain in his low back and legs that day.  (*Id.*)  However, he stated that "the new medications have helped his pain," and it was noted that he did not experience side effects.  (*Id.* at 637.)  Upon physical examination, he was observed to stand and walk unassisted with a non-antalgic gait.  (*Id.* at 636.)  His medications were increased.  (*Id.* at 637.)

Claimant returned to the neurosurgeon for a follow-up appointment on January 25, 2018.  (*Id.* at 640.)  He reported that the "physical therapy did not bring him any relief, and if anything it made his pain slightly worse."  (*Id.*)  Although a straight-leg-raising test was positive on both sides, Claimant was observed to have full strength in his lower extremities.  (*Id.* at 641.)  The neurosurgeon believed that Claimant was "not a surgical candidate" and recommended that he "return to pain management and discuss further options."  (*Id.* at 641–42.)

2.  *Treatment for Chronic Pancreatitis*

On February 4, 2016, Claimant reported to his primary care provider that he was experiencing rib pain that "continues without significant improvement" and occurred "when he is touching at [sic] or moving/coughing."  (*Id.* at 410.)  Initially, it was thought that the pain was caused by a "small fracture versus intercostal muscle strain," but when Claimant reported at his next appointment on February 29, 2016, that the pain had worsened, his primary care provider ordered a CT scan of his chest and abdomen "to

evaluate for lung/pancreatic cancer." (*Id.* at 407–08, 410.)  The CT scan showed that Claimant's "liver, adrenal glands, spleen, and pancreas and kidneys [were] unremarkable." (*Id.* at 483.)

Claimant presented to a gastroenterologist on July 25, 2016, complaining of abdominal pain.  (*Id.* at 556.)  The gastroenterologist observed that Claimant's "examination was benign" and suspected "a musculoskeletal type abdominal wall pain." (*Id.* at 558.)  He ordered some tests "to rule out pancreatic tail pathology" and prescribed Motrin.  (*Id.*)  On August 18, 2016, Claimant underwent a colonoscopy and had two benign polyps removed.  (*Id.* at 562, 569.)  He underwent an esophagogastroduodenoscopy on the same day, which was normal, except the gastroenterologist noted that Claimant suffered from chronic pancreatitis.  (*Id.* at 564–65.)

On January 30, 2017, Claimant presented to a different gastroenterologist, complaining of "pancreas pain." (*Id.* at 572.)  The gastroenterologist ordered a CT scan and instructed Claimant to follow a low-fat diet, avoid alcohol, and continue using his medication.  (*Id.* at 577.)  The CT scan was normal.  (*Id.* at 584, 588, 608.)  Claimant returned to the gastroenterologist on May 18, 2017, still complaining of abdominal pain. (*Id.* at 584, 593.)  The gastroenterologist again advised Claimant to eat a low-fat diet and avoid alcohol and instructed him to follow up with the pain management clinic for any medication adjustments.  (*Id.* at 589.)  On August 31, 2017, Claimant presented to the gastroenterologist for a follow-up appointment.  (*Id.* at 598.)  Although he reported that he continued to suffer from abdominal pain, he reported "[n]o recent pancreatic flares." (*Id.*)  He was instructed to make changes to his diet and exercise habits, stop smoking, and continue using his medications.  (*Id.* at 602–03.)

### 3. Treatment for COPD

A pulmonary function test conducted on March 21, 2016, revealed "[n]ormal spirometry, mild air trapping, no hyperinflation" but "elevated" "[a]irway resistance." (*Id.* at 489.) Claimant was diagnosed with shortness of breath. (*Id.*) Another test conducted on June 10, 2016, revealed "evidence of air-trapping, suggestive of underlying obstructive disorder." (*Id.* at 494–95.)

Claimant presented to a new primary care provider on February 28, 2017, and explained that "he has not had inhalers for awhile" and the one he was using "is not helping anymore." (*Id.* at 538.) He reported shortness of breath "with any exertion." (*Id.*) Upon physical examination, Claimant displayed "[n]o increased work of breathing or signs of respiratory distress." (*Id.* at 541.) He was prescribed a different inhaler. (*Id.*)

On July 14, 2017, Claimant returned for a follow-up appointment. (*Id.* at 550.) He denied shortness of breath but reported "occasional wheezing with too much exertion." (*Id.*) Upon physical examination, Claimant exhibited "[n]o increased work of breathing or signs of respiratory distress." (*Id.* at 552.) It was noted that his COPD was "controlled" with medication, and he was counseled on smoking cessation. (*Id.* at 553.)

### C. Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds

through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the

listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]." 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the

11

claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. at 128.) He further determined that Claimant had not engaged in substantial gainful activity since the amended alleged onset of his disability. (*Id.*) He found that Claimant's degenerative disc disease, degenerative joint disease, osteoarthritis, myofascial pain syndrome, chronic pancreatitis, and COPD constituted "severe" impairments. (*Id.*) However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 130.) Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform light work," except that he "can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently"; can stand, walk, and sit for six hours in an eight-hour workday; "can frequently balance, occasionally stoop, climb ramps and stairs, kneel, crawl, and crouch, and can never climb ladders, ropes, and scaffolds." (*Id.*) In addition, the ALJ found that Claimant "should avoid concentrated exposure to extreme cold, extreme heat, humidity, pulmonary irritants, and vibrations." (*Id.*)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, he was unable to perform his past relevant work. (*Id.* at 135.) He noted that Claimant is "a younger individual" with "at least a high school education" and that "[t]ransferability of job skills [was] not material to the determination of disability." (*Id.* at 136.) Because the ALJ determined that Claimant was unable to perform the full range of light work, he enlisted a vocational expert to aid in his finding that Claimant is capable of working as a photocopy machine operator, fast food worker, or bottle packer. (*Id.* at 136.) As a result,

the ALJ concluded that Claimant was not "under a disability . . . from January 6, 2016, through the date of this decision." (*Id.* at 137.)

## II.   *LEGAL STANDARD*

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

## III.   *ANALYSIS*

Claimant argues that the ALJ "did not fairly and reasonably evaluate [Claimant's] credibility in light of the medical evidence of record." (ECF No. 9 at 5–6.) He further asserts that the ALJ erred by concluding in the RFC assessment that Claimant was able "to perform work at the light level of exertion." (*Id.* at 6–7.) Claimant asks this Court to

award him benefits or to remand this matter to the ALJ.  (*Id.* at 7.)  The Commissioner responds that the ALJ's RFC assessment was based on Claimant's "longitudinal treatment history, his diagnostic studies, his physical examination findings, the state agency medical opinions, and his daily activities" and adequately accounted for Claimant's "pain complaints to the extent they were reasonably supported by the record."  (ECF No. 10 at 8–12.)

*A. Claimant's Subjective Complaints*

As part of the RFC assessment, the ALJ must evaluate a claimant's "statements and symptoms regarding the limitations caused by her impairments."  *Linares v. Colvin*, No. 5:14-cv-00120, 2015 WL 4389533, at *5 (W.D.N.C. July 17, 2015) (citing 20 C.F.R. §§ 404.1529, 416.929; *Craig v. Chater*, 76 F.3d 585, 593–96 (4th Cir. 1996)).  To evaluate the disabling effect of an individual's symptoms, the ALJ first determines whether "objective medical evidence" supports the existence of "a condition reasonably likely to cause the [symptoms] claimed."  *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  If so, the ALJ then "evaluate[s] the intensity and persistence of [the claimant's] symptoms" to "determine how [those] symptoms limit [the claimant's] capacity for work."  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  An individual's subjective complaints about his symptoms are relevant to the latter determination.  *See id.* §§ 404.1529(c)(3), 416.929(c)(3).  Put simply, the claimant's symptoms "must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the [symptoms], in the amount and degree, alleged by the claimant."  *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) (per curiam) (quoting *Craig*, 76 F.3d at 591).  The ALJ is obligated to "assess whether the claimant's subjective symptom statements are

consistent with the record as a whole." *Vass v. Berryhill*, No. 7:17-cv-87, 2018 WL 4737236, at \*6 n.4 (W.D. Va. June 12, 2018), *adopted by* 2018 WL 4704058 (W.D. Va. Sept. 30, 2018).

In this case, the ALJ concluded that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 131.)  The ALJ reviewed the medical evidence relating to Claimant's subjective complaints of pain, noting that in early 2015, Claimant reported back pain that "radiated into his legs with numbness and tingling in his feet." (*Id.*)  The ALJ further noted that the results of June 2015 testing were normal, and Claimant's physician prescribed medication and recommended physical therapy, which Claimant told his physician helped to relieve his pain. (*Id.*)  And the ALJ observed that during this time, Claimant had full strength in his lower extremities and "stable" range of motion in his knees and spine. (*Id.* at 131–32.)  The ALJ also summarized the records from Claimant's treatment at the pain management center, explaining that Claimant received injections in 2016 and 2017, which Claimant reported provided "some relief," and that his physical examinations during that period were largely normal, with non-antalgic gait. (*Id.* at 132.)  Finally, the ALJ reviewed records from late 2017, noting that imaging results revealed some nerve compression in Claimant's spine and "a small herniated nucleus pulposus," but Claimant's neurosurgeon "did not feel surgery was warranted and ordered another round of physical therapy" and modified Claimant's medication. (*Id.* at 133.)  The ALJ noted that Claimant made "good" progress during physical therapy. (*Id.*)

In addition, the ALJ summarized the treatment Claimant received for his "chronic pancreatitis" and COPD. (*Id*. at 132.) As to the former, the ALJ noted that Claimant's pancreatitis was "stable" in August 2016, and although he complained of "pancreas pain" in January 2017, May 2017 imaging of his abdomen was negative. (*Id*.) The ALJ also observed that Claimant reported no or "dull" abdominal pain in July and August 2017. (*Id*. at 132–33.) And with respect to Claimant's COPD, the ALJ noted that although Claimant complained of shortness of breath in February 2017, his physical examinations revealed "no increased work of breathing or signs of respiratory distress," and the condition was "stable with treatment of inhalers and inhaled corticosteroids." (*Id*. at 132.) The ALJ further observed that Claimant continued to smoke cigarettes during this time. (*Id*.)

Finally, the ALJ mentioned that Claimant's "allegations are somewhat inconsistent with his generally normal level of daily activity and interaction that demonstrated [sic] by the record. For instance, [Claimant] has admitted activities of daily living that include managing finances, independently handling his personal care needs, preparing his own meals, mowing the lawn, food shopping, and completing household chores." (*Id*. at 134.)

This evidence led the ALJ to ultimately conclude, "the objective medical evidence within the record does not support the extent or intensity of [Claimant's] subjective allegations. Instead, a comprehensive review of all the documented medical evidence, including objective findings and diagnostic test results, taking into account [Claimant's] self-reporting and subjective allegations . . . supports the limitation outlined in the above [RFC]." (*Id*. at 135.)

Essentially, Claimant appears to assert that his diagnoses, which are consistently noted by his providers during the relevant period, indicate that he has pain that would

cause him to be "off-task at least 20% of the workday." (ECF No. 9 at 5–6.) But this is only part of the analysis. Once the ALJ finds "objective medical evidence showing a condition that could reasonably produce the alleged symptoms"—*i.e.*, a diagnosis—he must then assess whether the record supports "the claimant's statements about symptoms and their functional effects." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1529(b), (c)(4), 416.929(b), (c)(4)). To that end, "[a] claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence." *Anthony v. Colvin*, No. 3:12-cv-2413 DCN, 2013 WL 6284442, at *10 (D.S.C. Dec. 4, 2013) (report and recommendation of magistrate judge) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). Contrary to Claimant's assertion, "a diagnosis alone does not establish functional limitations." *Jones v. Colvin*, No. 6:14-cv-01328-RBH, 2015 WL 4095863, at *14 (D.S.C. July 6, 2015) (report and recommendation of magistrate judge).

And the ALJ's analysis was otherwise proper: he explained that the objective evidence demonstrated that Claimant's spinal conditions had no effect on his strength or range of motion in his lower extremities and were treated with medication and physical therapy rather than surgery, that the abdominal pain caused by his chronic pancreatitis lessened or ceased, and that his COPD caused no "signs of respiratory distress" and was "stable with medication," and Claimant continued to smoke cigarettes. (Tr. at 131–33.) The ALJ also observed that Claimant was able to continue "his generally normal level of daily activity and interaction." (*Id.* at 134.) Simply put, the ALJ "explained his reasoning and weighed [Claimant's] subjective statements against other evidence." *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018). He was not required to do more. As such,

the undersigned **FINDS** that the ALJ did not err in his evaluation of Claimant's subjective complaints.

###### B. *RFC Assessment*

"In the RFC assessment, the ALJ uses all relevant evidence, medical or otherwise, to determine a claimant's 'ability to meet the physical, mental, sensory, and other requirements of work.'" *Ladda*, 749 F. App'x at 172 (quoting 20 C.F.R. §§ 404.1545, 416.945). The ALJ's decision "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). Claimant contends that "[a]n individual who suffers from [his] severe physical impairments would not be able to engage in light exertional work activities." (ECF No. 9 at 6.) Again, he rests on his diagnoses but does not elaborate on the ways in which those diagnoses cause work-preclusive functional limitations. (*See id.* at 5–6.) "[I]t is not enough to merely point to a medical diagnosis in order to establish disability. Instead, Claimant must also show how that condition results in actual functional limitation." *Parsons v. Berryhill*, No. 3:18-cv-01107, 2019 WL 2252023, at *11 (S.D.W. Va. May 2, 2019), *adopted by* 2019 WL 2256395 (S.D.W. Va. May 24, 2019). He has not done so here.

Further, as the undersigned has already explained, the ALJ conducted an extensive review of the evidence in this case and concluded that Claimant could perform light work with the additional restrictions he imposed. (Tr. at 131–35.) This RFC, the ALJ stated, accounted for "postural limitations in consideration of [Claimant's] allegations of pain and shortness of breath on exertion" and "work that does not involve concentrated exposure to a work environment that could exacerbate his COPD or his back pain." (*Id.*

at 134.)  Of note, "disability requires more than mere inability to work without pain." *Clemens v. Astrue*, No. 3:11-cv-599-MOC-DSC, 2012 WL 1698293, at *4 (W.D.N.C. Apr. 24, 2012) (quoting *Ferrante v. Bowen*, 869 F.2d 593 (4th Cir. 1989) (table), 1989 WL 14408, at *4).  The ALJ's comments demonstrate that the he considered the functional limitations that Claimant's conditions could be expected to produce, in addition to Claimant's representations about those limitations and his abilities, and assessed how the objective medical findings reflected Claimant's capacity for work.  In other words, the ALJ complied with his obligation to "discuss[] . . . which evidence [he] found credible and why, and specific[ally] appli[ed] . . . the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citing *Hines v. Bowen*, 872 F.3d 56, 59 (4th Cir. 1989)).  The undersigned therefore **FINDS** that the RFC assessment is supported by substantial evidence.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 9), **GRANT** the Commissioner's request to affirm his decision (ECF No. 10), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings

and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.  Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: February 18, 2020

Dwane L. Tinsley
United States Magistrate Judge